FILED IN THE
UNITED STATES
BANKRUPTCY COURT

2010 AUG 16  PM 12: 38

DISTRICT OF UTAH
MAIL

James "Tucker" Hansen, Bar No. 5711
HANSEN WRIGHT EDDY & HAWS, P.C.
Attorneys for Beehive Credit Union
233 S. Pleasant Grove Blvd., Suite 202
Pleasant Grove, Utah 84062
Telephone: (801) 224-2273
Facsimile: (801) 224-2457

| IN THE UNITED STATES BANKRUPTCY COURT  CENTRAL DIVISION, DISTRICT OF UTAH  350 South Main Street, Salt Lake City, Utah 84101 ||
|---|---|
| IN RE:  TROY J. FUKUMITSU and  DENYSE C. FUKUMITSU,  Debtors. | Case No. 10-30851  Judge R. Kimball Mosier  Chapter 13 |
| **MOTION OF BEEHIVE CREDIT UNION FOR TERMINATION  OF THE AUTOMATIC STAY** ||

Pursuant to 11 U.S.C. § 362(d) and Bankruptcy Rules 4001 and 9014, Beehive Credit Union ("Creditor"), a secured creditor of the above-referenced Debtors hereby moves the Court to terminate the automatic stay and in support of the motion, represents as follows:

1. On August 11, 2010, the Debtors filed a petition commencing a case under Chapter 13, Title 11, United States Code.

2. On or about July 9, 2007, the Debtors executed and delivered to Beehive Credit Union, as Trustee, for the benefit of Creditor as beneficiary, a Revolving Credit Deed of Trust (the "Trust Deed") to secure the performance by the Debtors of their obligation under a Loanliner Open-End Home Equity Credit Agreement and Truth in Lending Disclosure (the "Note") contemporaneously executed and delivered for valuable consideration to Creditor. Copies of the Trust Deed and Note are attached hereto as Exhibits "A" and "B", respectively.

17

3. The Trust Deed creates a valid security interest in the property (the "Property") commonly described as 1227 North 3020 West, Provo, Utah County, State of Utah, in favor of Creditor.

4. The amount owing on the indebtedness, as of the filing date of the petition for relief, is $20,550.79.

5. Subsequent to this Chapter 13 petition, the Debtors have failed to pay the monthly payments to Creditor.

6. The Debtors have little or no equity in the Property and the Property is not necessary for an effective reorganization.

7. The Debtors have failed to provide Creditor with adequate protection of its interest in the Property.

8. The Debtors' failure to make the payments due to Creditor constitutes cause for terminating the automatic stay.

9. The automatic stay provided for under 11 USC § 362(a) should be terminated to allow Creditor, its successors and assigns to proceed with its rights and remedies under state law as they relate to the real Property, or the Debtors should be ordered to provide Creditor with adequate protection of its interest in the property.

WHEREFORE, Beehive Credit Union respectfully requests the grant of the relief requested by this Motion and allow the Creditor to pursue all legal remedies against the Property described herein.

DATED this _12th_ day of August, 2010.

HANSEN, WRIGHT EDDY & HAWS, P.C.

JAMES "TUCKER" HANSEN
ATTORNEY FOR MOVANT

## MAILING CERTIFICATE

I hereby certify that I mailed a true and correct copy of the foregoing **MOTION FOR RELIEF FROM AUTOMATIC STAY**, postage prepaid by first-class mail, on this _13th_ day of August, 2010, to the following:

Troy J. Fukumitsu
Denyse C. Fukumitsu
1227 North 3020 West
Provo, Utah 84601

Troy J. Fukumitsu
Denyse C. Fukumitsu
P.O. Box 822
Orem, Utah 84059

Robert S. Payne
Lincoln Law
921 West Center Street
Orem, Utah 84057

Kevin R. Anderson, Trustee
405 South Main Street, Ste 600
Salt Lake City, Utah 84111

United States Trustee
Ken Garff Building
405 South Main Street, Suite 300
Salt Lake City, Utah 84111

_Dorothy Woodcox_
SECRETARY

# EXHIBIT "A"

ENT **101556:2007** PG 1 of 7
RANDALL A. COVINGTON
UTAH COUNTY RECORDER
2007 Jul 13 11:37 am FEE 22.00 BY CM
RECORDED FOR SUNDANCE TITLE INSURANCE AG
ELECTRONICALLY RECORDED

WHEN RECORDED, MAIL TO

Beehive Credit Union

1467 South Main Street

Salt Lake City, UT 84115

11305

SPACE ABOVE THIS LINE FOR RECORDER'S USE

PARCEL I.D. # 36:881:0011

# REVOLVING CREDIT DEED OF TRUST

THIS DEED OF TRUST CONTAINS A DUE-ON-SALE PROVISION AND SECURES INDEBTEDNESS UNDER A CREDIT AGREEMENT WHICH PROVIDES FOR A REVOLVING LINE OF CREDIT AND MAY CONTAIN A VARIABLE RATE OF INTEREST.

THIS DEED OF TRUST ("Security Instrument") is made on ___07/09/07___, The Trustor is
TROY J. FUKUMITSU AND DENYSE C. FUKUMITSU, HUSBAND AND WIFE AS JOINT TENANTS

("Borrower"), The Trustee is Douglas S. Foxley, Attorney at Law ("Trustee"),
The Beneficiary is Beehive Credit Union, a corporation organized and existing under the laws of THE STATE OF UTAH,
whose address is PROVO                              109 West 920 South
Provo, UT 84601                                                        ("Lender").

IN CONSIDERATION of the indebtedness herein recited and the trust herein created;
TO SECURE to Lender:
(1) The repayment of all indebtedness due and to become due under the terms and conditions of the LOANLINER Home Equity Plan Credit Agreement and Truth-in-Lending Disclosures made by Borrower and dated the same day as this Security Instrument, and all modifications, amendments, extensions and renewals thereof (herein "Credit Agreement"). Lender has agreed to make advances to Borrower under the terms of the Credit Agreement, which advances will be of a revolving nature and may be made, repaid, and remade from time to time. Borrower and Lender contemplate a series of advances to be secured by this Security Instrument. The total outstanding principal balance owing at any one time under the Credit Agreement (not including finance charges thereon at a rate which may vary from time to time, and any other charges and collection costs which may be owing from time to time under the Credit Agreement) shall not exceed _____
Twenty Thousand Dollars
($ 20,000.00 ). That sum is referred to herein as the Maximum Principal Balance and referred to in the Credit Agreement as the Credit Limit. On the Final Payment Date, 20 years from the date of this Security Instrument, the entire indebtedness under the Credit Agreement, if not paid earlier, is due and payable.
(2) The payment of all other sums advanced in accordance herewith to protect the security of this Security Instrument, with finance charges thereon at a rate which may vary as described in the Credit Agreement.
(3) The performance of the Borrower's covenants and agreements under this Security Instrument and under the Credit Agreement.
    BORROWER irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of UTAH_____, State of Utah:

© CUNA MUTUAL INSURANCE SOCIETY, 1991, 2000 ALL RIGHTS RESERVED                                    EUT925 (LASER)

LOT 11, PLAT "A", COBBLESTONE VILLAGE SUBDIVISION, ACCORDING TO THE OFFICAL PLAT THEREOF RECORDED IN THE OFFICE OF THE UTAH COUNTY RECORDER.

which has the address of ___1227 NORTH 3020 WEST_____,
                                              (Street)
__PROVO_____, Utah __84601_____ (herein
             (City)                                       (Zip Code)
"Property Address");

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and fixtures, all of which shall be deemed to be and remain a part of the property covered by this Security Instrument; and all of the foregoing, together with said property (or the leasehold estate if this Security Instrument is on a leasehold) are hereinafter referred to as the "Property".

Complete if applicable:
This Property is part of a condominium project known as _____
_____.
This Property includes Borrower's unit and all Borrower's rights in the common elements of the condominium project.
This Property is in a Planned Unit Development known as _____.

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Finance Charges and Other Charges.** Borrower shall promptly pay when due all amounts borrowed under the Credit Agreement, all finance charges and applicable other charges and collection costs as provided in the Credit Agreement.

2. **Funds for Taxes and Insurance.** Subject to applicable law, Lender, at Lender's option, may require Borrower to pay to Lender on the day monthly payments of principal and finance charges are payable under the Credit Agreement, until all sums secured by this Security Instrument are paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Security Instrument, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance and flood insurance, if applicable, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional Lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Security

© CUNA MUTUAL INSURANCE SOCIETY, 1991, 2000 ALL RIGHTS RESERVED                        EUT925 (LASER)

Instrument that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Security Instrument.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 22 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Credit Agreement and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, second, (in the order Lender chooses) to any finance charges, other charges and collection costs owing, and third, to the principal balance under the Credit Agreement.

4. **Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Security Instrument, including Borrower's covenants to make payments when due. Except to the extent that any such charges or impositions are to be made to Lender under paragraph 2, Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Security Instrument, and leasehold payments or ground rents, if any. Within five days after any demand by Lender, Borrower shall exhibit to Lender receipts showing that all amounts due under this paragraph have been paid when due.

5. **Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," floods, and such other hazards as Lender may require and in such amounts and for such periods as Lender may require. Unless Lender in writing requires otherwise, the policy shall provide insurance on a replacement cost basis in an amount not less than that necessary to comply with any coinsurance percentage stipulated in the hazard insurance policy, and the amount of coverage shall be no less than the Maximum Principal Balance plus the full amount of any lien which has priority over this Security Instrument.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Security Instrument.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. All insurance proceeds are hereby assigned to Lender and shall be paid to Lender to the extent of all sums secured by this Security Instrument, subject to the terms of any mortgage, deed of trust or security agreement with a lien which has priority over this Security Instrument. Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restore or repair the Property, if it is economically feasible to do so.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Security Instrument.

© CUNA MUTUAL INSURANCE SOCIETY, 1991, 2000 ALL RIGHTS RESERVED                               EUT925 (LASER)

6. **Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Security Instrument is on a leasehold. If this Security Instrument is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and the constituent documents.

7. **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. Any amounts disbursed by Lender pursuant to this paragraph 7, with finance charges thereon, at the rate provided in the Credit Agreement, shall become additional indebtedness of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder. Any action taken by Lender under this paragraph shall not cure any breach Borrower may have committed of any covenant or agreement under this Security Instrument. Borrower agrees that Lender is subrogated to all of the rights and remedies of any prior lienor, to the extent of any payment by Lender to such lienor.

8. **Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

9. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, to the extent of any indebtedness under the Credit Agreement, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Security Instrument.

10. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

11. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 21 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Security Instrument, but does not execute the Credit Agreement, (a) is co-signing this Security Instrument only to grant and convey that Borrower's interest in the Property to Trustee under the terms of this Security Instrument, (b) is not personally liable under the Credit Agreement or under this Security Instrument, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations or amendments with regard to the terms of this Security Instrument or the Credit Agreement, without that Borrower's consent and without releasing that Borrower or modifying this Security Instrument as to that Borrower's interest in the Property.

12. **Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

© CUNA MUTUAL INSURANCE SOCIETY, 1991, 2000 ALL RIGHTS RESERVED    EUT925 (LASER)

13. **Governing Law; Severability.** The state and local laws applicable to this Security Instrument shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Security Instrument. In the event that any provision or clause of this Security Instrument or the Credit Agreement conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Credit Agreement which can be given effect without the conflicting provision, and to this end the provisions of this Security Instrument and the Credit Agreement are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

14. **Prior Mortgage or Deed of Trust; Modification; Future Advance.** Borrower shall not enter into any agreement with the holder of any mortgage, deed of trust or other security agreement which has priority over this Security Instrument by which that security agreement is modified, amended, extended, or renewed, without the prior written consent of the Lender. Borrower shall neither request nor accept any future advance under a prior mortgage, deed of trust, or other security agreement without the prior written consent of Lender.

15. **Borrower's Copy.** Borrower shall be furnished a copy of the Credit Agreement and of this Security Instrument at the time of execution or after recordation hereof.

16. **Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower may enter into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

17. **Waiver of Homestead Exemption.** To the extent permitted by law, Borrower hereby waives the benefit of the homestead exemption as to all sums secured by this Security Instrument.

18. **Waiver of Statutes of Limitation.** To the extent permitted by law, Borrower hereby waives statutes of limitation as a defense to any demand or obligation secured by this Security Instrument.

19. **Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

20. **Notice of Transfer of the Property; Advances after Transfer.** Borrower shall give notice to Lender, as provided in paragraph 12 hereof, prior to any sale or transfer of all or part of the Property or any rights in the Property. Any person to whom all or part of the Property or any right in the Property is sold or transferred also shall be obligated to give notice to Lender, as provided in paragraph 12 hereof, promptly after such transfer.

All amounts advanced under the Credit Agreement, up to the Maximum Principal Balance, are secured by this Security Instrument, whether advanced before or after sale or transfer of the Property, except any amounts which may be advanced by Lender more than five days after notice to Lender, given in accordance with paragraph 12 hereof, that such sale or transfer has occurred. Even if Borrower transfers the Property, Borrower will continue to be obligated under the Credit Agreement and this Security Instrument unless Lender releases Borrower in writing. As a condition to Lender's consent to any proposed transfer or as a condition to the release of Borrower, Lender may require that the person to whom the Property is transferred sign an assumption agreement satisfactory to Lender and Lender may impose an assumption fee. The assumption agreement will not entitle the person signing it to receive advances under the Credit Agreement.

21. **Transfer of the Property.** Subject to applicable law, Lender shall have the right to accelerate, that is, to demand immediate payment in full of all sums secured by this Mortgage or Deed of Trust, if Borrower, without the written consent of Lender, sells or transfers all or part of the Property or any rights in the Property.

If Lender exercises the option to accelerate, Lender shall give Borrower notice of acceleration in accordance with paragraph 12 hereof. The notice shall provide a period of not less than 30 days from the date of the notice within which Borrower may pay the sums declared due. If Borrower fails to pay those sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 22 hereof.

22. **Default; Termination and Acceleration; Remedies.** Each of the following events shall constitute an event of default ("event of default") under this Security Instrument: (1) Borrower commits fraud or makes a material misrepresentation in connection with this Security Instrument or the Credit Agreement; (2) Borrower does not meet the repayment terms of the Credit Agreement; or (3) Borrower's action or inaction adversely affects the Lender's rights in the Property secured by this Security Instrument. If an event of default occurs, then prior to exercising

© CUNA MUTUAL INSURANCE SOCIETY, 1991, 2000 ALL RIGHTS RESERVED                    EUT925(LASER)

any right or remedy provided for in this Security Instrument and prior to acceleration, Lender shall give notice as provided in paragraph 12 hereof. The notice shall specify: (a) the event of default; (b) the action required to cure such event of default; (c) a date not less than ten days from the date the notice is given to Borrower by which the event of default must be cured; and (d) that failure to cure the event of default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of an event of default or any other defense of Borrower to acceleration and sale. If the event of default is not cured on or before the date specified in the notice, Lender, at Lender's option, without further notice or demand, may declare default, may declare all of the sums secured by this Security Instrument to be immediately due and payable, and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 22, including, but not limited to, reasonable attorneys' fees.

If the power of sale is invoked, Trustee shall execute a written notice of the occurrence of an event of default and of the election to cause the Property to be sold and shall record such notice in each county in which the Property or some part thereof is located. Lender or Trustee shall mail copies of such notice in the manner prescribed by applicable law to the Borrower and to the other persons prescribed by applicable law. Trustees shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the lapse of such time as may be required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or Lender's designee may purchase the property at any sale.

Trustee shall deliver to the purchaser a Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees and costs of title evidence; (b) to all sums secured by this Security Instrument; and (c) the excess, if any, to the person or persons legally entitled thereto or to the county clerk of the county in which the sale took place.

23. **Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to five days before sale of the Property pursuant to any power of sale contained in this Security Instrument or at any time prior to entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which would be then due under this Security Instrument and the Credit Agreement had no acceleration occurred; (b) cures all other events of default under this Security Instrument and the Credit Agreement; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 21.

24. **Reconveyance.** This Security Instrument secures a revolving line of credit and advances may be made, repaid, and remade from time to time, under the terms of the Credit Agreement. When, according to the terms of the Credit Agreement, no more advances will be made, and Borrower has paid all sums secured by this Security Instrument (or earlier if required by applicable law), Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and the Credit Agreement. Trustee shall reconvey the Property without warranty to the person or persons legally entitled thereto. To the extent permitted by law, Lender may charge Borrower a fee for such reconveyance and require Borrower to pay costs of recordation, if any.

25. **Substitute Trustee.** Lender, at Lender's option, may from time to time, remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

26. **Request for Notices.** Borrower requests that copies of the notice of default and notice of sale be sent to Borrower's address which is the Property Address.

© CUNA MUTUAL INSURANCE SOCIETY, 1991, 2000 ALL RIGHTS RESERVED                                    EUT925 (LASER)

## REQUEST FOR NOTICE OF DEFAULT AND FORECLOSURE
## UNDER SUPERIOR MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Security Instrument to give Notice to Lender, at Lender's address set forth on page one of this Security Instrument, of any default under the superior encumbrance and of any sale or other foreclosure action.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

X _[signature]_ (Seal)
TROY J. FUKUMITSU
Borrower

X _[signature]_ (Seal)
DENYSE C. FUKUMITSU
Borrower

X _____ (Seal)
Borrower

X _____ (Seal)
Borrower

STATE OF ___UTAH___, ___UTAH___ County ss:

On this __9TH__ day of __JULY__, __2007__, personally appeared before me TROY J. FUKUMITSU AND DENYSE C. FUKUMITSU _____, the signer(s) of the above instrument, who duly acknowledged to me that __THEY__ executed the same.

My Commission _[stamp: SETH HOLDAWAY, NOTARY PUBLIC-STATE OF UTAH, 100 WEST 920 SOUTH, PROVO, UTAH 84601, COMM. EXP. 10-26-2010]_

_[signature]_
Notary Public residing at: _____

### REQUEST FOR RECONVEYANCE

TO TRUSTEE:
The undersigned is the holder of the Credit Agreement secured by this Security Instrument. Said Credit Agreement, together with all other indebtedness secured by this Security Instrument, have been paid in full. You are hereby directed to cancel said Credit Agreement and this Security Instrument, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Security Instrument to the person or persons legally entitled thereto.

Dated: _____

© CUNA MUTUAL INSURANCE SOCIETY, 1991, 2000 ALL RIGHTS RESERVED                    EUT925 (LASER)

# EXHIBIT "B"

BEEHIVE STATE EMPLOYEES CREDIT UNION
467 South Main
Salt Lake City, UT 84115

**LOANLINER**
HOME EQUITY SYSTEM

**Open-End Home Equity Credit Agreement and Truth in Lending Disclosure**

| BORROWER 1 NAME | TROY J FUKUMITSU | ACCOUNT NUMBER | 491561 |
|---|---|---|---|
| BORROWER 1 ADDRESS | POB 822 OREM, UT 840590822 | | |
| BORROWER 2 NAME | DENYSE FUKUMITSU | ACCOUNT NUMBER | |
| BORROWER 2 ADDRESS | POB 822 OREM, UT 840590822 | | |

## CREDIT AGREEMENT AND TRUTH IN LENDING DISCLOSURE

**INTRODUCTION.** This LOANLINER Home Equity Plan Credit Agreement and Truth in Lending Disclosure will be referred to as this "Plan". This Plan consists of this Agreement and the accompanying Addendum which is incorporated into and becomes a part of this Credit Agreement and Truth in Lending Disclosure. The words "you," "your," and "Borrower" mean each person who signs this Plan. The words "we," "us," "our," "Lender," and "credit union" mean the credit union whose name appears above or anyone to whom the credit union transfers its rights under this Plan.

**1. HOW THIS PLAN WORKS.** This Plan establishes a revolving line of credit account ("account"). You and the credit union anticipate that you will obtain a series of advances under this Plan from time to time. The maximum amount you can borrow ("credit limit") is disclosed in the Addendum. It is the amount of credit you may borrow, repay all or a portion and re-borrow subject to the terms of this Plan.

**2. PROMISE TO PAY.** You promise to repay to the credit union, or order, all advances made to you under this Plan, plus finance charges, other applicable charges, and costs of voluntary payment protection for which you are responsible under this Plan. You agree to pay the Minimum Payment on or before the due date.

**3. JOINT ACCOUNTS.** If this is a joint account, each of you must sign this Plan and you will be individually and jointly responsible for the promises you make in this Agreement, including paying all amounts owed. This means that the credit union can require any one of you to repay all advances plus applicable finance charges, other applicable charges, and voluntary payment protection costs. Unless the credit union's written policy requires all of you to sign for an advance, each of you authorizes the other(s) to obtain advances individually and agrees to repay advances made to the other(s). The credit union can release one of you from responsibility under this Plan without releasing the other(s).

**4. SECURITY INTEREST.** This Plan is secured by a mortgage, deed of trust, security deed, or security agreement (the "security instrument") in your dwelling which is described in the Addendum.

**5. PROMISES IN SECURITY INSTRUMENT.** The security instrument you sign the same day you sign this Plan is incorporated by reference into this Plan. You must keep all the promises you made in the security instrument.

**6. APPLICATION OF PAYMENTS.** Payments will be applied in the order the credit union chooses to any finance charges, voluntary payment protection costs, and other applicable charges due before being applied to your unpaid balance.

**7. CREDIT LIMIT.** You promise not to request or obtain an advance that will make your balance exceed your credit limit. Your credit limit will not be increased if you exceed your credit limit. If you exceed your credit limit, you agree to repay the excess immediately.

**8. ACCESS DEVICES.** You can obtain credit advances in any manner authorized by the credit union from time to time. Your application for this account also serves as a request to receive any additional access devices which may be available in the future in connection with this Plan. The terms of this Plan will also apply to any future access devices we issue to you for accessing this Plan.

**9. COST OF CREDIT.** The finance charge is the cost you pay for credit. Unless described otherwise on the Addendum, the finance charge on each new advance begins on the date of the advance and continues until the advance has been paid in full. There is no "free ride period" which would allow you to avoid a finance charge. To compute the finance charge, the unpaid balance for each day since your last payment (or since an advance if you have not yet made

(continued on next page)

## SIGNATURES

By signing below you agree that you have read the LOANLINER Home Equity Plan Credit Agreement and Truth in Lending Disclosure and Addendum and agree to be bound by the terms of the Agreement. You also acknowledge receipt of a copy of this Agreement, and the Home Equity Early Disclosure and handbook entitled "When Your Home is On the Line: What You Should Know About Home Equity Lines of Credit" given to you at the time of application.

*Notice to Vermont Borrowers:* **NOTICE TO COSIGNER: YOUR SIGNATURE ON THIS NOTE MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.**

X _[signature]_ (SEAL) 7-9-07
BORROWER SIGNATURE                    DATE

X _[signature]_ (SEAL) 7-9-07
BORROWER 2 SIGNATURE                  DATE

X _[signature]_ (SEAL)
WITNESS SIGNATURE                     DATE

X _[signature]_ (SEAL) 7-9-07
WITNESS SIGNATURE                     DATE

© CUNA MUTUAL GROUP, 1998, 1999, 2000, 01, 03, ALL RIGHTS RESERVED

EST105 (LASER)

| Beehive State Employees Credit Union | TROY J FUKUMITSU | Date 7/9/2007 |
|---|---|---|

**CREDIT AGREEMENT AND TRUTH IN LENDING DISCLOSURE (continued)**

a payment) is multiplied by the applicable periodic rate. The sum of those amounts is the finance charge owed. The periodic rate and corresponding annual percentage rate are disclosed in the Addendum. The balance used to compute the finance charge is the unpaid balance each day after payments and credits to that balance have been subtracted and any new advances have been added.

**10. ANNUAL PERCENTAGE RATE.** The annual percentage rate under this Plan includes only interest and no other costs. The Addendum shows the current interest rate as a periodic rate and a corresponding annual percentage rate. If the interest rate for this Plan is a variable interest rate the Addendum explains how the variable interest rate works. If we forego an annual percentage rate increase, we may return to the full index and margin at a later adjustment subject to any rate limitations.

**11. OTHER CHARGES.** In addition to finance charges, your account is subject to certain other charges as described in this Plan and the Addendum. The credit union can add any of these other charges to your balance or you can pay them in cash.

**12. CHARGES TO YOUR ACCOUNT.** We may charge your account to pay other fees and costs that you are obligated to pay under this Plan or under the security instrument. In addition, we may charge your account for funds required for continuing property insurance coverage or costs to protect or perfect our security interest in your dwelling. These costs or expenses include, without limitation, payments to cure defaults under any existing liens on your dwelling. If you do not pay your property taxes, we may charge your account and pay the delinquent taxes. Any amount so charged to your account will be a credit advance. However, we have no obligation to provide any of the credit advances referred to in this paragraph.

**13. LENDER'S RIGHTS:**

(a) **Termination and Acceleration.** In accordance with applicable law, we can terminate your credit line and require you to pay us the entire outstanding balance in one payment, and charge you certain fees or suspend additional extensions of credit or reduce your credit limit, if any of the following happen:

*For Wisconsin Borrowers Only:*

(1) You fail to make a required payment when due two times within a twelve month period, or

(2) Your failure to observe the terms of this Plan materially impairs the condition, value or protection of, or our rights in, the property securing this Plan.

*For All Other Borrowers:*

(1) You engage in fraud or make a material misrepresentation at any time in connection with this Plan. This can include, for example, a false statement about your income, assets, liabilities, or any other aspects of your financial condition.

(2) You do not meet the repayment terms of this Plan.

(3) Your action or inaction adversely affects the collateral for this Plan or our rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the property, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the property, creation of a senior lien on the property without our permission, foreclosure by a prior lienholder, use of the dwelling for prohibited purposes, or taking of the property through eminent domain.

(b) **Suspension or Reduction.** In addition to any other rights we may have, we can suspend additional extensions of credit or reduce your credit limit during any period in which any of the following are in effect:

(1) The value of the property securing this Plan declines significantly below the property's appraised value for purposes of this Plan. This includes, for example, a decline such that the initial difference between the credit limit and the available equity is reduced by fifty percent and may include a smaller decline depending on the individual circumstances.

(2) We reasonably believe that you will be unable to fulfill your payment obligations under this Plan due to a material change in your financial circumstances.

(3) You are in default of a material obligation of this Plan. We consider all of your obligations to be material. No default will occur until we mail or deliver a notice of default to you.

(4) We are precluded by government action from imposing the annual percentage rate provided for under this Plan.

(5) The priority of our security interest is adversely affected by government action to the extent that the value of the security interest is less than 120 percent of the credit limit.

(6) We have been notified by a regulatory authority that continued advances may constitute an unsafe and unsound business practice.

(7) The maximum annual percentage rate under this Plan has been reached.

(8) *For Wisconsin Borrowers Only:* You engage in fraud or material misrepresentation in connection with the Plan.

(c) **Change in Terms.** We may make changes to the terms of this Plan if you agree to the change in writing at that time, if the change will unequivocally

(Continued on next page)

© CUNA MUTUAL GROUP, 1998, 1999, 2000, 01, 03, ALL RIGHTS RESERVED                    EST105 (LASER)

| Beehive State Employees Credit Union | TROY J FUKUMITSU | Date 7/9/2007 |

## CREDIT AGREEMENT AND TRUTH IN LENDING DISCLOSURE (continued)

benefit you throughout the remainder of this Plan, or if the change is insignificant (such as changes relating to our data processing systems). We may also change the terms of this Plan in accordance with other reasons, if stated on the Addendum. If this Plan follows an index and the index is no longer available, we will choose a new index and margin. The new index will have a historical movement substantially similar to the original index, and the new index and margin will result in an annual percentage rate that is substantially similar to the rate in effect at the time the original index becomes unavailable.

**14. USE OF ACCOUNT.** You promise to use your account for consumer (personal, family or household) purposes, unless the credit union gives you written permission to use the account also for agricultural or commercial purposes, or to purchase real estate.

**15. MEMBERSHIP IN CREDIT UNION.** You must be a member of the credit union to obtain credit advances.

**16. CONFLICTING INSTRUCTIONS.** You agree not to provide conflicting instructions to us regarding your Plan (such as instructing us not to make credit advances to a joint borrower).

**17. PREPAYMENT.** You may prepay all or part of what you owe at any time without any prepayment penalty.

**18. CANCELLATION BY YOU.** You can cancel your right to future credit advances under this Plan, by notifying us in writing. If this is a joint account and one of you cancels future credit advances under this Plan, the cancellation will apply to both of you, unless the credit union gives written notice to one of you that you may continue to obtain advances. Despite cancellation, your obligations under this Plan will remain in full force and effect until you have paid us all amounts due.

**19. TAX CONSEQUENCES.** You should consult a tax advisor regarding the deductibility of interest and charges under this Plan.

**20. STATEMENT AND NOTICES.** On a regular basis the credit union will send a statement showing all transactions on your account during the period covered by the statement. Statements and notices will be mailed to you at the most recent address you have given the credit union in writing. Notice to any one of you will be notice to all.

**21. TRANSFER OR ASSIGNMENT.** You cannot assign your rights and obligations under this Plan. In spite of any divorce or agreement between joint borrowers, each is responsible for the total amount owed under this Plan. Subject to applicable law, we reserve the right to sell or transfer this Plan to another lender, entity or person, and to assign our rights under the security instrument.

**22. UPDATING INFORMATION.** You promise that you will give us updated financial information and information about matters affecting the title and value of the property securing this Plan. You agree that we may obtain credit reports and appraisals at our option and expense for any reason.

**23. PROPERTY INSURANCE.** You promise to insure the property that secures this Plan, in the amount the credit union requires, against fire and other hazards (including flood insurance if the credit union requires it). You may obtain property insurance from anyone you want that is acceptable to the credit union. We have the right not to accept the insurer for reasonable cause. Subject to applicable law, if you fail to obtain or maintain insurance as required, we may purchase insurance to protect our own interest, add the premium to your balance and/or pursue any other remedies available to us.

**24. VOLUNTARY PAYMENT PROTECTION --** We may offer Voluntary Payment Protection to you. Voluntary Payment Protection is not necessary to obtain credit. If you purchase Voluntary Payment Protection from us, you authorize us to add the fees or insurance charges monthly to your loan balance and charge you interest on the entire balance. At our option we will change your payment or the period of time necessary to repay the loan balance. The rate used to determine the fees or insurance charges may change in the future. If the rate changes, we will provide any notices required by applicable law.

**25. NO WAIVER.** The credit union can delay enforcing any of its rights under this Plan without losing any of its rights.

**26. CONTINUED EFFECTIVENESS.** If the law makes any term(s) of this Plan unenforceable, the other terms will remain in effect.

**27. DUE ON SALE.** You promise to notify the Credit Union immediately if you enter into an agreement to sell or transfer ownership of all or any part of the property securing this account. If you sell or transfer ownership without first obtaining the written consent of the Credit Union, the Credit Union may exercise its rights described in the Security Instrument, including the right to demand immediate payment in full of all sums secured by the Security Instrument.

**28. THE FOLLOWING NOTICE IS REQUIRED BY CALIFORNIA LAW: TRANSFER OF THE PROPERTY.** Subject to applicable law, Lender shall have the right to accelerate, that is, to demand immediate payment in full of all sums secured by this Mortgage or Deed of Trust, if Borrower, without the written consent of Lender, sells or transfers all or part of the Property or any rights in the Property.

**29. NOTICE TO GEORGIA BORROWERS.** This is an instrument under seal.

**30. NOTICE TO UTAH BORROWERS.** This written agreement is a final expression of the agreement between you and the credit union. This written agreement may not be contradicted by evidence of any oral agreement.

**31. THE FOLLOWING NOTICE IS REQUIRED BY NEW YORK LAW: Default in the payment of this loan agreement may result in the loss of the property securing the loan. Under federal law, you may have the right to cancel this agreement. If you have this right, the creditor is required to provide you with a separate written note specifying the circumstances and times under which you can exercise this right.**

© CUNA MUTUAL GROUP, 1998, 1999, 2000, 01, 03, ALL RIGHTS RESERVED

EST105 (LASER)

| Beehive State Employees Credit Union | TROY J FUKUMITSU | Date 7/9/2007 |

## BILLING RIGHTS -- KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**NOTIFY US IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR STATEMENT.** If you think your statement is wrong, or if you need more information about a transaction on your statement, write us on a separate sheet at the address listed on your statement. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first statement on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay a credit card account automatically from your share account or share draft account, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach us three business days before the automatic payment is scheduled to occur.

**YOUR RIGHTS AND OUR RESPONSIBILITIES AFTER WE RECEIVE YOUR WRITTEN NOTICE.** We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the statement was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to send statements to you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your statement that are not in question.

If we find that we made a mistake on your statement, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your statement. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your statement was correct.

**SPECIAL RULE FOR CREDIT CARD PURCHASES.** If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right: (a) You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and (b) The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

BEEHIVE CREDIT UNION
P.O. BOX 65479
1467 SOUTH MAIN
SALT LAKE CITY, UT 84115

## HOME EQUITY ADDENDUM

This Addendum is incorporated into and becomes a part of your LOANLINER® Credit Agreement and Truth in Lending Disclosure.

| OPENING DATE | MATURITY DATE | CREDIT LIMIT | ACCOUNT NUMBER |
|---|---|---|---|
| 07/09/2007 | 08/25/2027 | 20,000.00 | 491561 |

| BORROWER NAME AND ADDRESS | ADDRESS OF PROPERTY SECURING ACCOUNT |
|---|---|
| TROY J FUKUMITSU<br>DENYSE FUKUMITSU<br>POB 822<br>OREM, UT 840590822 | 1227 NORTH 3020 WEST<br>PROVO, UT 84601 |

[X] DISCOUNTED RATE. The initial discounted rate will be in effect for 6 months. Initial discounted rate: 6.75%

**ANNUAL PERCENTAGE RATE**            DAILY PERIODIC RATE
        8.25 %                                  0.02260 %

The current rate that would have applied without the discount is:

| INDEX RATE | MARGIN ADDED TO INDEX | ANNUAL PERCENTAGE RATE | DAILY PERIODIC RATE |
|---|---|---|---|
| 8.25% | % | 8.25% | 0.02660% |

[ ] NON-DISCOUNTED RATE

| INDEX RATE | MARGIN ADDED TO INDEX | ANNUAL PERCENTAGE RATE | DAILY PERIODIC RATE |
|---|---|---|---|
| 8.25% | % | 8.25% | 0.02660% |

MINIMUM ANNUAL PERCENTAGE RATE: 6.00 %

SCHEDULE OF CLOSING COSTS: SEE BEEHIVE CREDIT UNION'S SUPPLEMENTAL LOAN AGREEMENT

| DESCRIPTION | AMOUNT | DESCRIPTION | AMOUNT |
|---|---|---|---|
| NO FEE EQUILINE | $ 0.00 | | $ |
| | $ | | $ |
| | $ | | $ |
| | $ | | $ |
| | $ | | $ |

PAYMENT INFORMATION: You can obtain credit advances for 10 years. This period is called the "draw period." At our option, we may renew or extend the draw period. After the draw period ends the repayment period will begin. The length of the repayment period will depend on the balance at the time of the last advance you obtain before the draw period ends. You will be required to make monthly payments during both the draw and repayment periods. At the time of the credit advance a payoff period of 120 monthly payments will be used to calculate your payment.

The payoff period will always be the shorter of the payoff period for your outstanding balance or the time remaining to the maturity date. Your payment will be set to repay the balance after the advance, at the current annual percentage rate, within the payoff period. Your payment will be rounded up to the nearest dollar. Your payment may also change if the annual percentage rate increases or decreases. Each time the annual percentage rate changes, we will adjust your payment to repay the balance within the original payoff period. Your payment will include any amounts past due and any amount by which you have exceeded your credit limit, and all other charges. Your payment will never be less than the smaller of $25.00, or the full amount you owe.

TRANSACTION REQUIREMENTS: The maximum credit advance you can receive per day via credit card access is $20,000.00

PERIODIC RATE AND CORRESPONDING ANNUAL PERCENTAGE RATE: We will determine the periodic rate and the corresponding annual percentage rate as follows. We start with an independent index, (the "Index"), which is the Wall Street Journal Prime Rate. When a range of rates has been published, the highest rate will be used. We will use the most recent index value available to us as of 10 days before the date of any annual percentage rate adjustment. To determine the periodic rate that will apply to your account, we add a margin, as disclosed above, to the value of the Index. If the rate is not already rounded we then round up to the next .25%. Then we divide this sum by the number of days in a year (365). To obtain the annual percentage rate we will multiply the periodic rate by the number of days in a year (365). This result is the annual percentage rate.

The annual percentage rate can change quarterly on the first day of January, April, July and October. There is no limit on the amount by which the annual percentage rate can change during any one year period. The maximum **ANNUAL PERCENTAGE RATE** that can apply is 18% or the maximum permitted by law, whichever is less. However, under no circumstances will your rate go below the **MINIMUM ANNUAL PERCENTAGE RATE** disclosed above.

FEE REIMBURSEMENT: If you close your line of credit plan within 2 years of the opening date, you agree to reimburse the credit union for any third party fees paid by the credit union on y our behalf.

©CUNA MUTUAL INSURANCE SOCIETY, 1992, 1999 ALL RIGHTS RESERVED                    SPECIAL EAD001 202371 05/18/2007